## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

JASON WEST,              )
                             )
      **Plaintiff,**       )
                             )
**v.**                   )      **Civil Action No. 5:17-cv-04241**
                             )
**UNITED STATES OF AMERICA,** *et al.***,**   )
                             )
      **Defendants.**     )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 17), filed on February 8, 2018. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 20.) On March 7, 2018, Plaintiff filed his Response in Opposition. (Document No. 24.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

## PROCEDURAL BACKGROUND

On October 30, 2017, Plaintiff, acting *pro se*[1] and incarcerated at FCI Beckley, located in Beaver, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). Plaintiff named the following as Defendants: (1) United States of America; (2) Officer Thomas; (3) Officer Tavereo; and (4) Officer Whitt. (<u>Id.</u>) Plaintiff alleges that he suffered "a very traumatic eye injury" on July 15, 2016, as a result of an assault by another inmate. (<u>Id.</u>) Plaintiff explains that both he and Inmate X worked in the bakery of food services at FCI Beckley from May 2016 through early July 2016. (<u>Id.</u>) Plaintiff states that Officers Thomas, Tavereo, and Whitt were aware of Inmate X's "dislike" of Plaintiff. (<u>Id.</u>) Plaintiff states that he was called into the Assistant Food Service Administrator's Office in early June 2016 to meet with Officer Thomas and Officer Whitt. (<u>Id.</u>) Plaintiff alleges that Officer Thomas "acknowledged that he was aware of Mr. [X's] dislike for me, [but] told me to deal with it or they would fire me." (<u>Id.</u>) Plaintiff states that the following day he was again called the Assistant Food Service Administrator's Office, where he met with Officer Thomas and Officer Tavereo. (<u>Id.</u>) Plaintiff states that Officer Thomas informed Plaintiff that he "was pissed off that Mr. [X] quit the bakery, and that he thought it was [Plaintiff's] fault." (<u>Id.</u>) Plaintiff claims that he informed Officer Thomas that he was unaware of why Inmate X quit the bakery, but that Inmate X was trying to get "other Tennessee inmates" to attack Plaintiff. (<u>Id.</u>) Plaintiff states that Officer Thomas acknowledged that he was aware that Inmate X was trying to get "other Tennessee inmates" to attack Plaintiff, but Officer Thomas only responded that he was unhappy that Inmate X had quit the bakery. (<u>Id.</u>) Plaintiff states that he was later assaulted by Inmate X on July 15, 2016, in the recreation room. (<u>Id.</u>) Plaintiff claims that he "suffered a very traumatic eye injury that caused the loss of [his] eye

2

and vision." (Id.) Plaintiff alleges that he has underwent three major eye surgeries and now has a prosthetic eye. (Id.) Plaintiff states he has "endured much pain and suffering" and has been diagnosed with PTSD directly related to the assault. (Id.) Plaintiff alleges that Officers Thomas, Tavereo, and Whitt were aware that Plaintiff was in danger, but failed to take any action to protect him. (Id.) Plaintiff states that "[t]here was an element of choice, and they made an unreasonable decision not to intervene in any type of way, other than to threaten to terminate [Plaintiff's] job." (Id.) Plaintiff requests monetary relieve, "cost to cover further medical expenses," and "medical coverage related to [his] injury." (Id.)

On November 16, 2017, Plaintiff filed his Application to Proceed Without Prepayment of Fees. (Document No. 5.) By Order entered on November 17, 2017, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 6.) The Clerk issued process on the same day. (Document No. 7.) On February 8, 2018, the Defendants' filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 17 and 18.) Defendants argue that Plaintiff's claims should be dismissed based on the following: (1) "Plaintiff's constitutional claims pursuant to Bivens must be dismissed due to Plaintiff's failure to exhaust administrative remedies" (Document No. 18, pp. 10 – 13.); and (2) "Plaintiff's FTCA claim against the United States must be dismissed as the actions of BOP officials clearly fall within the discretionary function exception to the FTCA, thus depriving the Court of subject matter jurisdiction" (Id., pp. 13 – 23.).

As Exhibits, Defendants attach the following: (1) A copy of the Declaration of Lori K.

Trump (Document No. 37-1, pp. 2 - 6.); (2) A copy of Plaintiff's Administrative Tort Claim Form dated March 8, 2017 (Id., pp. 8 - 14.); (3) A copy of a letter dated August 1, 2017, from the United States Department of Justice denying Plaintiff's tort claim (TRT-MXR-2017-04910) (Id., pp. 16 - 17.); (4) A copy of Plaintiff's "Public Information Inmate Data as of 01-11-2018" (Id., pp. 19 – 21.); (5) A copy of Plaintiff's "Inmate History Quarters" dated January 11, 2018 (Id., pp. 23 - 24.); (6) A copy of the "Department of Justice Assignment History Report" (Id., p. 26.); (7) A copy of the SIS Investigative Report (Id., pp. 28 – 34.); and (7) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" dated January 30, 2018 (Id., pp. 36 – 39.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 9, 2018, advising him of the right to file a response to Defendants' Motion. (Document No. 20.) On March 7, 2018, Plaintiff filed his Response in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 24.) First, Plaintiff argues that he properly exhausted his administrative remedies. (Id., p. 4.) Next, Plaintiff argues that he is alleging that Defendants were deliberately indifferent to his safety because staff were aware that Plaintiff "was under an immediate threat of violence and bodily harm, and they failed to act on it in any kind of way." (Id., pp. 4 – 5.) Plaintiff states that he is not claiming that "Inmate X should have been moved to a new job or placed in to segregation." (Id., p. 4.)

## SUMMARY OF EVIDENCE

Plaintiff arrived at FCI Beckley on January 6, 2016, and was assigned to work in the Food Service Department on January 21, 2016. (Document No. 17-1, p. 3.) Plaintiff worked in the

kitchen and dining room before being assigned to the Food Services bakery on May 5, 2016. (Id.)
On July 15, 2016, at 2:35 p.m., a Recreation Special reported to the Operations Lieutenant by
radio that he was escorting Inmate X to the Lieutenant's Office for possibly being involved in an
altercation with another inmate. (Id., pp. 29 and 33.) After being notified of the incident, another
Recreation Specialist went to the pool hall area of the recreation to look for the second
participant. (Id.) The Recreation Specialist found Plaintiff holding a bloody t-shirt up to his eye
and he escorted Plaintiff of the recreation area. (Id.) The Recreation Specialist inquired as to
what happened, and Plaintiff responded that "I've been stabbed in the eye." (Id.) Plaintiff and
Inmate X were escorted to Health Services and Plaintiff was then transported to the Charleston
Area Medical Center for treatment of his eye injury. (Id.)

Both inmates were interviewed separately by Special Investigative Agent ("SIA") A.
Hussion. (Id., pp. 28 – 34.) The Investigative Report, indicates that SIA Hussion interviewed
Plaintiff on the day of the incident (July 15, 2016 at 3:15 p.m.) and again on July 20, 2016. (Id.,
p. 31.) During the interview conducted on July 15, 2016, Plaintiff allegedly stated that Inmate X
had been causing problems in the bakery for a couple of months. (Id.) Plaintiff further explained
that he and Inmate X had gotten into an argument concerning 25 pounds of flour that had been
concealed in a garbage can. (Id.) Plaintiff stated that he believed Inmate X was trying to set him
up to get him in trouble and he told Inmate X such. (Id.) Plaintiff further stated that Inmate X had
asked Plaintiff to come to the equipment room at 2:30 that day. (Id.) Plaintiff stated that Inmate
X swung at him with a wooden object, but missed. (Id.) Plaintiff stated that he fell down and
Inmate X jumped on top of him and stabbed him in the eye with a piece of wood. (Id.) Plaintiff

further stated that Inmate X bit Plaintiff's right thumb as Plaintiff as trying to push Inmate X away. (Id.) In his Response, Plaintiff disputes that he was interviewed by SIS Hassion on the date of the incident. (Document No. 24, p. 2.) Plaintiff acknowledges that he was interviewed on July 20, 2016. (Id.)

During the interview conducted by SIS Hussion on July 20, 2016, Plaintiff again claimed he was defending himself and that Inmate X attacked him with a wooden type weapon. (Document No. 17-1, p. 31.) Plaintiff denied attacking Inmate X and stated he followed Inmate X into the room as Inmate X requested him to do. (Id.) Plaintiff stated that Inmate X rushed him, stabbing him in the eye. (Id.) Plaintiff stated that Inmate X bit his right thumb as he tried to push Inmate X away. (Id.) Plaintiff stated he was not the instigator as suggested by other inmates. (Id.) In his Response, Plaintiff further states that he told SIS Hassion that Inmate X asked him to come to the equipment room to "talk" and Plaintiff "assumed that [Inmate X] just wanted to move past his hard feeling for [him]." (Document No. 24, p. 1.)

Also on July 20, 2016, Inmate X was interviewed by SIS Hussion. (Document No. 17-1, p. 31.) Inmate X stated that Plaintiff was the aggressor. (Id.) Inmate X acknowledged that he and Plaintiff had argued over things in the bakery and Inmate X had quit his job to get away from Plaintiff. (Id.) Inmate X stated he attempted to dive into the equipment room to avoid Plaintiff, who had been following him around. (Id.) Inmate X stated that Plaintiff followed him into the room and shoved him into the corner and began hitting him in the head and upper body. (Id.) Inmate X stated that Plaintiff threw him to the floor and jumped on top of him. (Id.) Inmate X explained that he had to use his hands to push Plaintiff off. (Id.) Inmate X denied possessing a

6

weapon and stated that his thumb may have went in Plaintiff's eye as he was pushing him away. (Id.)

SIS Hussion interviewed additional inmate witnesses, but their statements were redacted from the Investigation Report. (Id., p. 32.) Finally, SIS Hussion reviewed the video surveillance footage. (Id.) It was noted that video surveillance footage provided no view of what happened inside the room, but only an adjacent view of who entered the equipment room. (Id.) SIS Hussion stated that the review of the surveillance video revealed that at 2:30 p.m., Inmate X abruptly turns to walk into the equipment room with two other inmates. (Id., p. 32.) Within a few seconds, Plaintiff was following Inmate X and entered the room. (Id.) The two inmates that were with Inmate X then exited the room, and another inmate immediately walks up to the opened door of the room and appears to act as a lookout to ensure no one enters the room. (Id.) Subsequently, Inmate X exits the room and uses his forearms to get inmates moving out of his way. (Id.) Plaintiff then exits the room and enters the restroom. (Id.) In the restroom, Plaintiff attempts to care of his eye and another inmate enters and assists Plaintiff by providing him with a shirt to either cover up the blood on Plaintiff's shirt or to conceal Plaintiff's identity so he could leave the area undetected. (Id.)

In conclusion, SIS Hussion finds that Inmate X was followed into the equipment room at approximately 2:30 p.m., by Plaintiff. (Id., p. 33.) Plaintiff then confronted Inmate X and slapped him on the left side of the face. (Id.) Inmate X responded by rushing Plaintiff and punching him multiple times as they fell to the floor. (Id.) One of those punches resulted in severe damage to Plaintiff's eye. (Id.) Both inmates exchanged punches to their head and upper body. (Id.) Before

the altercation concluded, Inmate X bit Plaintiff on the right thumb. (Id.) As the incident was in progress, other inmates monitored the outer door as lookouts. (Id.) It was recommended that both inmates receive an assignment of "Separation" from each other based on animosity and both receive an Incident Report for fighting. (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995). The Fourth Circuit has explained the standard of review as follows:

> [W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdiction facts. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous.

Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Although the Court will view all underlying facts and inference in a light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. Anderson, 477 U.S. at 252, 106 S.Ct. at 2505. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Id., 447 U.S. at 247-48, 106 S.Ct. at 2505. If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.    **Bivens Claim:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), <u>aff'd</u>, 54 Fed.Appx. 159 (4th Cir. 2003), <u>cert. denied</u>, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." <u>Ross v. Blake</u>, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into

_____

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the

12

good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra;  Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and

prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to

14

resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion to Dismiss, Defendants argue that Plaintiff failed to exhaust his administrative remedies. (Document No. 18, pp. 10 - 13.) Specifically, Defendants contend that "Plaintiff did not file any administrative remedies with regard to the claims made in the instant case prior to filing his lawsuit." (Id., p. 12.) In support, Defendants submit the Declaration of Ms. Lori K. Trump, a Paralegal for the Federal Bureau of Prisons. (Document No. 17-1, pp. 2 - 6.) Ms. Trump declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Specifically, Ms. Trump states as follows in her Declaration (Id., p. 4.):

26.    Plaintiff did not file any administrative remedies with regard to the claims made in the instant case prior to filing his lawsuit.

27.    Plaintiff has filed a total of five administrative remedy requests during his incarceration.

28.    Plaintiff filed an administrative remedy request in November 2016, Remedy ID No. 882516-F1, which was rejected.[3]

29.    He never attempted to appeal the rejection or further pursue this remedy.

30.    Plaintiff filed Remedy ID No. 901821-F1 while at FCI Manchester on May 12, 2017, requesting proper treatment for his left eye.

31.    He was provided a response for information purposes only and appealed the remedy through both the Regional and Central Office levels (Remedy ID Nos. 901821-R1 and A1), which were also closed and responses provided for informational purposes only.

(Id., p. 5.) Defendants acknowledge that Plaintiff properly exhausted his administrative remedies concerning his claim of improper medical care for his eye. (Document No. 18, p. 13.) Defendants, however, argue that the administrative remedies filed with FCI Manchester

---

[3]  It appears that Plaintiff's request involved his "DHO appeal." (Document No. 17-1, p. 37.)

concerning the alleged improper medical treatment for his eye "cannot be construed as effectively exhausting the claims raised in the instant case that staff members violated his constitutional rights by failing to protect him from an assault." (Document No. 18, pp. 12 – 13.) Defendants, therefore, argue that Plaintiff failed to exhaust his available administrative remedies concerning his failure to protect claim. (Id.)

In Response, Plaintiff contends that he properly exhausted his administrative remedies. (Document No. 24, p. 4.) Plaintiff explains that he filed an administrative tort claim with the BOP. (Id.) Specifically, Plaintiff states that he exhausted his administrative remedies by filing his "Administrative 95 Form." (Id.) Plaintiff states that his administrative claim was denied. (Id.) Plaintiff explains that he was notified that "it was a final denial, if not satisfied, [he] had six months to bring suit in the appropriate U.S. District Court." (Id.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA. Although Plaintiff contends that he properly filed an administrative tort claim with the prison, the exhaustion requirements concerning FTCA and Bivens actions differ.[4] See Davis v. United States, 2007 WL 3473275

_____

[4]   Before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle

17

(N.D.W.Va. Nov. 13, 2007); <u>Murphy v. Inmate Systems Management</u>, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). Having examined the record, the Court finds that the administrative remedies filed by Plaintiff relate to the exhaustion of his FTCA claim, not his <u>Bivens</u> claim.[5] Plaintiff fails to produce any documents indicating that he exhausted his <u>Bivens</u> claim. Additionally, there is no indication or allegation by Plaintiff that the administrative remedy process was unavailable. To the extent Plaintiff is arguing that he should be excused from exhaustion due to the futility of filing an administrative remedy asserting the same claim denied in his administrative tort claim, his argument is without merit. The United States Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[6] <u>Booth v. Churner</u>, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); <u>also see Massey</u>, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); <u>Goodwin v. Beasley</u>, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts

---

[5] meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

[5] Although it appears that Plaintiff has exhausted his administrative remedies concerning his claim that staff at FCI Manchester failed to provide adequate medical treatment for his eye, such a claim is not an issue in this action. In this action, Plaintiff alleges that FCI Beckley staff knowingly failed to protect him from Inmate X.

[6] Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury.

18

have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack of knowledge about the grievance process."); Smith v. Boyd, 2008 WL 2763841, * 1 (D.S.C. July 11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned recommends that Plaintiff's Bivens claim be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

**2.    FTCA Claim:**

Plaintiff appears to assert a negligence claim under the FTCA against Defendants. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th

Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be

held liable in tort in the same respect as a private person would be liable under the law of the

place where the act occurred." Id. Section 2680, however, exempts from the waiver certain

categories of claims. See 28 U.S.C. §§ 2680(a)-(n). Section 2680(a) contains the discretionary

function exception. The discretionary function exception excludes from the FTCA's waiver of

sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government,
> exercising due care, in the execution of a statute or regulation, whether or not such
> statute or regulation be valid, or based upon the exercise or performance or the
> failure to exercise or perform a discretionary function or duty on the part of the
> federal agency or an employee of the Government, whether or not the discretion
> involved be abused.

28 U.S.C. § 2680(a). Plaintiff bears the burden of demonstrating that the discretionary function

exception does not apply. Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); LeRose

v. United States, 2006 WL 5925722 * 8 (S.D.W.Va. May 17, 2006)(J. Copenhaver). Whether the

discretionary function exception bars suit against the United States depends upon two factors.

See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz

v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the conduct at

issue must involve "an element of judgment or choice." Berkovitz, 486 U.S. at 536, 108 S.Ct.

1959; also see Williams v. United States, 50 F.3d 299, 309 (4th Cir. 1995). Where there is a

mandatory statute, regulation, or policy, there is no discretion, and therefore no exception

"because 'the employee has no rightful option but to adhere to the directive.'" Gaubert, 499 U.S.

at 322, 111 S.Ct. at 1273(quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954.) Second, if

conduct involved an "element of judgment or choice," the Court must determine whether that

judgment is of the kind that the discretionary function exception was designed to shield. <u>Gaubert</u>, 499 U.S. at 322 - 23. "Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." <u>Id.</u> at 323. The focus is on the "nature of the conduct" and not the "status of the actor." <u>See</u> <u>Gaubert</u>, 499 U.S. at 325. Thus, the Court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." <u>Suter v. United States</u>, 441 F.3d 306, 310 - 11 (4th Cir. 2006). "When a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Id.</u>

First, the Court must consider whether the challenged conduct was discretionary or involved an element of judgment or choice. Although Plaintiff contends that he is not claiming that prison officials improperly allowed Inmate X to continue working in the bakery with Plaintiff or improperly allowed Inmate X to remain in general population, a review of the Complaint reveals otherwise. (Document No. 24, p. 4.) In the instant case, Plaintiff contends that prison officials were aware that Plaintiff was "under an immediate threat of violence" from Inmate X and failed to take action to ensure Plaintiff's safety. Plaintiff does not explain what action prison officials should have taken other than to have staff present in the area where Plaintiff was assaulted by Inmate X. Since taking action to separate the inmates by placing the

inmates in separate work areas or removing one from general population would have hindered the inmates' ability to have physical contact with one another, the undersigned will consider such as part of Plaintiff's claim. Plaintiff does not identify any mandatory directive concerning inmate classification, inmate placement, or staff allocation. Title 18 U.S.C. § 4042 provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). Although the foregoing statute imposes upon the BOP a general duty to care for inmates, the statute does not set forth any specific means of carrying out that duty. Thus, the BOP retains discretion as to how it will fulfill that duty. See Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998)(Section 4042 gives discretion to the BOP as to the means to comply with the statute.); Goforth v. United States, 2013 WL 5658347, * 3 (S.D.W.Va. Oct. 15, 2013)("Cases from this circuit and other circuits have unanimously held that BOP officials retain wide discretion as to the means by which this general duty is fulfilled.") Decisions concerning inmate classification, inmate placement, and allocation of staff involve an element of judgment or choice. See Rich v. United States, 811 F.3d 140, 146 (4th Cir. 2015)("Prison officials are afforded discretion in determining where to place inmates and whether to keep certain individuals or gangs separated from one another."); Donaldson v. United States, 281 Fed.Appx. 75 (3rd Cir. 2008)(finding that "[n]o federal statute, regulation, or policy required the BOP to take a particular course of action to ensure [plaintiff's] safety from attacks by other inmates," including his fellow inmate who had made prior threats of violence); Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003)(explaining that "decisions with regard to classification of prisoners,

assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have flexibility to operate"); Cohen, 151 F.3d at 1344(prison's decision to place the inmate attacker at a minimum security prison was a discretionary function); Little v. United States, 2014 WL 4102377, * 6 (N.D.W.Va. Aug. 18, 2014)(finding that the discretionary function exemption applies to decisions as to inmate classification and placement in general population); Goforth, 2013 WL 5658347 at * 3 ("BOP housing assignments are discretionary and are not subject to a mandatory directive"); Davis v. United States, 2010 WL 2754321 (W.D.Va. July 12, 2010)(discretionary function exception applied to inmate's claim that surveillance cameras and officers were not properly positioned to maintain security); Strachan v. United States, 2009 WL 1586812 (E.D.Ky. June 5, 2009)(finding discretionary function exception applied to plaintiff's claim that he was assaulted by another inmate because there were no officers or manned security cameras in the living unit); and Brown v. United States, 569 F.Supp.2d 596, 600 (W.D.Va. 2008)(discretionary function exception applied to "a prison official's decision regarding whether to place an inmate in the general population"). Based on the foregoing, the undersigned finds that the first prong of the discretionary function test is satisfied because prison staff are allowed discretion regarding the classification of inmates, the placement of inmates, and the allocation of staff.

Next, the undersigned will consider whether the judgment is of the kind that the discretionary function exception was designed to shield. As stated above, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows

a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. <u>Gaubert</u>, 499 U.S. at 324. The BOP "must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also managing costs and ensuring the safety of the prison staff and the community." <u>Caudle v. United States</u>, 72 F.3d 132 (7th Cir. 1995). Thus, "[m]atters such as the allocation of guards and other correctional staff are plainly grounded in policy." <u>Goforth</u>, 2013 WL 5658347, at * 4. Additionally, decisions concerning the placement or classification of inmates are grounded in public policy. <u>See</u> <u>Rich</u>, 811 F.3d at 146(Since prison officials' decisions as to where to place inmates and whether to keep certain individuals or gangs separated from one another "invoke several policy considerations for prison administrators, they are precisely the kind of determinations that the discretionary function exception is intended to protect."); <u>Cohen</u>, 151 F.3d at 1344(finding that the BOP's "actions in classifying prisoners and placing them in institutions involve conduct and decisions that meet both prerequisites for application of the discretionary function exception"); <u>Middleton v. United States Federal Bureau of Prisons</u>, 658 Fed.Appx. 167, 170 (3rd Cir. 2016)(finding that the act of assigning an inmate to a prison job is covered by the discretionary function exception); <u>Usry v. United States</u>, 2013 WL 1196650, * 7 (N.D.W.Va. March 25, 2013), <u>aff'd</u>, 545 Fed.Appx. 265 (4th Cir. 2013)(finding that decisions regarding the placement of inmates "are unquestionably grounded in social, economic, safety and security concerns"); <u>Jacocks v. Hedrick</u>, 2006 WL 2850639, * 10 (W.D.Va. Sep. 29, 2006)("The supervisory defendants' decisions regarding . . . staffing of the housing unit also fall within the discretionary function exception); <u>Michell v. United States</u>, 149 F.Supp.2d 1111, 1114

(D.Ariz. 1999), aff'd, 20 Fed.Appx. 636 (9th Cir. 2001)("Decisions by governmental officials as to the day-to-day security needs of a prison, including the number of guards to employ to supervise a given area, where to place emergency alarms, and tactical choices made surrounding the movement of inmates within the institutions are judgment calls and choices based on policy determinations that seek to accommodate 'safety [goals] and the reality of finite agency resources.'") The Court further notes that decisions regarding staffing clearly have economic ramifications. Based on the foregoing, the undersigned finds that the discretionary function exception applies because both prongs of the discretionary function test are satisfied. Accordingly, Plaintiff's above claim should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 17) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written

objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 13, 2018.

Omar J. Aboulhosn
United States Magistrate Judge

26